UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EPIGMENIO GOMEZ,

        Petitioner,

                                    CASE NO: 2:10-CV-14408
v.                                     HONORABLE NANCY G. EDMUNDS

GREG MCQUIGGIN,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

Michigan prisoner Epigmenio Gomez ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), following a jury trial in the Wayne County Circuit Court and was sentenced to life imprisonment without the possibility of parole in 2007. In his pleadings, he alleges that the trial court violated his constitutional rights by refusing to instruct the jury on self-defense. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.    Facts and Procedural History**

Petitioner's conviction arises from the stabbing death of Cathleen Jasmine Hahn ("victim") in Dearborn Heights, Michigan on February 3, 2007. At trial, Crystal Manuel, a

self-described "stripper" testified that, on the evening of February 2, 2007, she received a call from the Petitioner about an escort advertisement she had placed in the newspaper. Manuel sent her boyfriend, Gregory Smith, to drive the victim to Petitioner's address at 10:00 or 11:00 p.m.

Smith drove the victim to Petitioner's apartment and waited for her in the parking lot. After about 45 minutes, Smith became concerned and called both the victim's phone and Petitioner's number, which Manuel had written on a sheet of paper for him. Smith testified that he called the victim "about twenty-five or more" times, and the other number "a lot." After some time, he went up to Petitioner's second-floor apartment and knocked on the door. Someone eventually came to the door, and without opening it, said "He's not here." After several more unsuccessful attempts to get a response from either Petitioner or the victim, Smith left the apartment building.

At 7:43 a.m. on February 3, 2007, the police and fire departments responded to a fire at Petitioner's apartment; the cause of which was never determined. It was at this time that the police found the victim's body about 30 yards from the apartment complex. The body was found with duct tape around the neck and a sheet wrapped partially around the body. After calling the owner of the apartment, the police identified Petitioner as the person who had been staying there. The police then learned that Petitioner had been arrested in Ionia County at 11:20 a.m. that morning for diving while intoxicated with a blood-alcohol level of 0.26. Later that day, Petitioner was transported from Ionia to Wayne County and charged with first-degree murder.

Assistant Wayne County Medical Examiner, Doctor John Bechinski, performed the victim's autopsy on February 4, 2007. Dr. Bechinski cited the cause of death as two

stab wounds. One stab wound went through the victim's abdomen, rib cage, and liver. The second wound, which was fatal, went into her abdomen; through her rib cage, liver, pancreas; and into her aorta. Dr. Bechinksi also stated that manual strangulation was a possible cause of death due to fingernail abrasions on both sides of the victim's neck.

Dr. Bechinksi found that the victim had defensive bruises on her left and right hands, her left elbow, and on the front of her lower legs. He found that these were consistent with the victim being on her back and kicking or struggling away from an assailant. Dr. Bechinski also found three possible bite marks on the victim's body as well as several other "probable torture wounds." Dr. Bechinski opined that the victim was restrained while several incised wounds were clustered in her chest area because they were "nice straight wounds." Finally, Dr. Bechinski found a large incised wound, which spanned the victim's entire lower back and went into her abdominal cavity.

The blood on Petitioner's sweat shirt, boxer shorts, cigarette pack, as well as two knives found in his apartment all matched the victim's DNA. Petitioner's DNA was also found in the victim's vaginal swabs.

Petitioner testified in his own defense at trial. He stated that after spending most of the day on February 2, 2007, with his sister, he went home and began to drink beer and tequila. Sometime after 7:00 p.m., he began making phone calls to escort services, estimating that he called "more than ten" different numbers before calling Manuel and agreeing on an acceptable price.

Petitioner testified that he arranged for a woman to visit his apartment for the price of $190 per hour. By the time the victim came to his apartment, Petitioner had drank "several" beers. Petitioner stated that when the victim arrived, she took $200 from

him, and they began to have protected sex. After some time, Petitioner asked the victim if he could "enter her from behind." For an additional $50, the victim agreed.

Petitioner testified that after having sex, the victim asked him for the additional $50, as well as a tip. When Petitioner responded that he did not have any more money, the victim became "very angry and started talking English real fast." At some point, the victim came back into the room with a knife in her hand. The victim, again, demanded more money and cut Petitioner's right hand. Petitioner grabbed the victim's neck, and they struggled for a minute. The victim scratched Petitioner's neck and chest and did not drop the knife. Petitioner pushed the victim back, and she slammed against the wall and fell but still had possession of the knife. Petitioner was unsure if the victim was conscious, but noticed that she was bleeding from her stomach. When Petitioner heard Smith knocking at the door, he got scared. He fled to the basement of the building where he fell asleep for more than two hours.

After waking up, Petitioner returned to his apartment and began to remember what happened. Petitioner had two drinks of tequila and went back into his bedroom where he found the victim on the floor surrounded by lots of blood. Petitioner drank more tequila, wrapped the victim in a blanket, and duct taped her neck. After throwing the victim's body out a window, Petitioner dragged it away from the building where it was discovered by the police a few hours later.

Petitioner claimed that he did not remember using a knife on the victim or cutting her neck and hands. He also did not recall putting the bloody clothing and knives in the dumpster, setting the apartment on fire, or leaving the apartment. Petitioner denied planning to kill the victim that day.

At the close of the defense's case, the trial judge excused the jury and told the defense counsel that Petitioner "takes the issue [of self-defense] away from us by his own denial of having inflicted any of the injuries that caused [the victim's] death." The trial court concluded that there was no way a jury could find that Petitioner inflicted the injuries on the victim in self-defense based on his own testimony. The trial judge refused to instruct the jury on self-defense. Defense counsel objected.

The trial court granted Petitioner's motion for a directed verdict on felony-murder, leaving only the premeditated murder charge for the jury to consider. Following deliberations, the jury found Petitioner guilty of the first-degree murder. The trial court subsequently sentenced Petitioner to the mandatory term of life imprisonment without the possibility of parole.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the sufficiency of the evidence and the jury instructions. The Michigan Court of Appeals denied relief on those claims and affirmed his conviction. *People v. Gomez*, No. 280808, 2009 WL 418542 (Mich. Ct. App. Feb. 19, 2009) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Gomez*, 484 Mich. 870, 769 N.W.2d 714 (2009).

Petitioner thereafter filed his federal habeas petition, raising the following claim:

He was denied the right to a jury trial, and the right to present a defense when the trial judge refused to instruct the jury on the defense theory of self-defense.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

### III. Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A State court's decision is 'contrary to' ...clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [The Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza,* 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)); see also *Bell v. Cone,* 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of §2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case.'" *Wiggins v. Smith* 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); see also *Bell,* 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application

must have been 'objectively unreasonable.'" *Wiggins,* 539 U.S. at 520-21 (citations omitted); see also *Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett* _U.S._, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh,* 521 U.S. at 333, n. 7; *Woodford v. Viscotti,* 537 U.S. 19,24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* _U.S._, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Under §2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See

*Williams,* 529 U.S. at 412; see also *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court'") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington,* 131 S. Ct. At 785. Furthermore, it "does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer* 537 U.S. 3, 8 (2002); see also *Mitchell,* 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin,* 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones,* 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. §2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _U.S._, 131 S. Ct. 1388, 1398 (2011).

**IV.     Analysis**

Petitioner asserts that he is entitled to habeas relief because the trial court failed

to instruct the jury on the theory of self-defense in violation of his Sixth Amendment right to a jury trial and his Fourteenth Amendment due process right to present a defense.

In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Additionally, the failure to give an instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995); *see also Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). A failure to instruct does not deprive a petitioner of fundamental fairness when the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

That being said, the Due Process Clause of the Fourteenth Amendment requires criminal trials to comply with "prevailing notions of fundamental fairness." *California v. Trombetta*, 476 U.S. 479, 485 (1984). This standard requires "that criminal defendants be afforded a meaningful opportunity to present a complete defense." *Id.* "A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense." *Taylor v.*

*Withrow,* 288 F.3d 846, 852 (6th Cir. 2002). A defendant is thus entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988). "The failure to give a requested self-defense instruction, however, does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988); *see also Gimotty v. Elo*, 40 F. App'x 29, 33–34 (6th Cir. 2002); *Taylor*, 288 F.3d at 851.

In this case, the state trial court refused to instruct the jury on self-defense because it found that the evidence, including Petitioner's own testimony, did not support such an instruction. The Michigan Court of Appeals agreed that a self-defense instruction was not supported by the evidence and denied relief on this claim. The court explained in relevant part:

> The trial court's jury instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence. *People v. McGhee*, 268 Mich. App. 600, 606, 709 N.W.2d 595 (2005), lv pending. A trial court's decision whether an instruction applies to the facts is reviewed for an abuse of discretion. *People v. Gillis*, 474 Mich. 105, 113, 712 N.W.2d 419 (2006).
>
> "In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10 (1990). In order to act in justifiable self-defense, there must be evidence that the defendant acted intentionally, but that his actions were justified by the circumstances. *Id.* at 503, 456 N.W.2d 10.
>
> Defendant argues that a self-defense instruction was warranted in light of his own testimony that he was involved in a struggle with the victim after she attacked him armed with a knife. According to defendant, he grabbed the victim around the throat during the struggle, but stated that she did not

10

> lose consciousness. Defendant also testified that he pushed the woman against the wall and then saw that she was bleeding from her belly, but defendant denied ever holding a knife.
>
> Initially, we note that defendant's testimony failed to account for much of the undisputed physical evidence. Defendant's version of events did not explain the numerous cuts, bruises, and abrasions that were all over the victim's body, which the medical examiner testified were inflicted while she was still alive. It also failed to account for the evidence that the victim was strangled to unconsciousness, or the horizontal and vertical T-shaped stab wounds to her chest. The cause of death was determined to be two deep stab wounds and manual strangulation, but defendant denied stabbing the victim or holding a knife, and also denied choking the victim to unconsciousness. Accordingly, the trial court did not err by refusing to instruct the jury on self-defense.

*Gomez*, 2009 WL 418542 at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court's refusal to instruct the jury on self-defense did not violate Petitioner's right to a fair trial nor deprive him of the right to present a defense because there was insufficient evidence to warrant such an instruction. While Petitioner testified that the victim confronted him with a knife and they struggled, he never admitted intentionally killing the victim or even holding a knife. Petitioner was also unable to explain many of the victim's numerous injuries – and he denied choking her to death and denied inflicting the deep stab wounds to her stomach. Under Michigan law, "a finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10 (1990). Petitioner's testimony does not support such a finding.

In *Taylor v. Withrow,* 288 F.3d 846 (6th Cir. 2002), a case almost directly on point, the Sixth Circuit held that state trial court's ruling that there was no evidence of

justified self-defense, and its consequent refusal to instruct the jury on self-defense and imperfect self-defense, did not involve either an unreasonable determination of the facts or an unreasonable application of clearly established federal law, so as to warrant habeas relief, where the petitioner testified at his murder trial that he pulled his gun as a defensive act but that he did not intentionally shoot the victim to defend himself, and that, instead, the gun discharged accidently. *Id.* at 853-54. In so ruling, the Sixth Circuit noted that under Michigan case law, a defendant cannot claim justified self-defense as a defense to homicide unless the defendant claims that the killing was intentional. *Id.* at 853 (internal citation omitted).

In the present case, Petitioner argues that the trial court impermissibly evaluated the evidence in refusing to instruct the jury on self-defense. The record, however, reveals that the trial court indicated that Petitioner could have had a self-defense claim to an assault charge based upon his testimony that the victim initially confronted him with a knife and he responded by choking her and pushing her against the wall. The trial court then went on to state that Petitioner did not have a self-defense claim to the actual murder because he denied intending to kill the victim and indicated that he did not choke the victim to death nor possess a knife during the incident. The trial court thus did not improperly evaluate the evidence, but rather simply determined that Petitioner's own testimony did not support a claim of self-defense to the murder because he denied acting intentionally.

Petitioner also argues that evidence of his intoxication explains his incomplete memory and inability to provide direct evidence of self-defense. But, under Michigan Law, it is not a defense to claim that the defendant was impaired by voluntarily

consumed alcoholic liquor. *See* Mich. Comp. Laws § 768.37. The United States Supreme Court has held that states may bar voluntary intoxication defenses without violating due process. *See Montana v. Egelhoff,* 518 U.S. 37 (1999). Consequently, the fact that Petitioner may have been drinking or intoxicated is irrelevant and is not enough to overcome the fact that he did not remember, or admit to, killing the victim.

Because there was insufficient evidence that Petitioner acted in self-defense in killing the victim, the trial court's refusal to instruct the jury on self-defense did not deny Petitioner a fundamentally fair trial. Moreover, Petitioner was not denied the opportunity to present a complete defense. The record indicates that defense counsel argued the lack of premeditation, combined with Petitioner's intoxication, as a defense to the charges. Defense counsel also insinuated that someone else other that Petitioner could have entered the apartment and inflicted the fatal injuries after Petitioner fled the apartment and before he returned and disposed of the body. Petitioner has thus failed to establish that the trial court erred in refusing to instruct the jury on self-defense or that his constitutional rights were violated. More importantly, for purposes of habeas review, he has failed to demonstrate that the Michigan Court of Appeals' decision is unreasonable. Habeas relief is not warranted on this claim.

Lastly, the Court notes that even if the trial court erred in failing to give the self-defense instruction, Petitioner is not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas

cases); *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit). Here, it is highly unlikely that the lack of a self-defense instruction affected the jury's verdict. The nature and extent of the victim's injuries, the circumstances of the crime, Petitioner's own testimony, and Petitioner's actions after the murder provided significant evidence of Petitioner's guilt of first-degree murder. Habeas relief is not warranted.

**V.     Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. §2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a

threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claim. The Court therefore **DENIES** a certificate of appealability.

Lastly, the Court concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). The Court therefore **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: October 19, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 19, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager